IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 19, 2021

## ERNESTO PEREZ AGUIRRE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. CR170389      James G. Martin, III, Judge**

_____

**No. M2019-02209-CCA-R3-PC**

_____

Ernesto Perez Aguirre, Petitioner, appeals from the dismissal of his petition for post-conviction relief in which he alleged that his guilty plea was unknowingly and involuntarily entered. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

E. Kendall White, IV, Franklin, Tennessee, for the appellant, Ernesto Perez Aguirre.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Kim Helper, District Attorney General; and Mary Katharine White Evins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner was indicted by the Williamson County Grand Jury with two counts of rape of a child and one count of aggravated sexual battery in October of 2014. He entered into a negotiated plea agreement in July of 2016. The agreement provided that Petitioner would plead guilty to one count of attempted rape of a child with a recommended sentence of eight years as a Range I, standard offender at 30% and two counts of aggravated sexual battery with a recommended sentence for each count of eight years as a Range I, standard offender at 100%. The sentences for attempted rape of a child and one count of aggravated sexual battery were ordered to be served concurrently with each other but consecutively to

the second count of aggravated sexual battery, for a total effective sentence of sixteen years at 100%. Defendant was "subject to the sex offender registry and community supervision for life" as a result of the guilty pleas. The agreement also specified that Defendant was responsible for payment of court costs. The judgment forms reflect that Petitioner was sentenced on July 15, 2016.

On July 3, 2017, Petitioner filed a pro se petition for post-conviction relief. Petitioner argued that: (1) he did not knowingly, intelligently and voluntarily waive his right to trial; (2) he received ineffective assistance counsel; (3) his conviction was based on a coerced confession; (4) evidence was obtained as a result of an unlawful arrest; (5) his conviction was based on a violation of double jeopardy; and (6) he was arrested without a warrant.

The post-conviction court determined that the pro se petition presented a colorable claim and appointed counsel to represent Petitioner on the post-conviction petition. After several agreed orders allowing for additional time to file an amended petition, Petitioner sought dismissal of post-conviction counsel. Post-conviction counsel filed a response indicating that he met with Petitioner and that the two were "comfortable" working with each other on the petition. That same day, post-conviction counsel filed a "certification of counsel" which stated that all non-frivolous constitutional grounds had been raised in the pro se petition and that any ground not raised would be waived.

*Post-conviction Hearing*

At the post-conviction hearing, Petitioner, a native Spanish speaker, testified that he worked with trial counsel on his case prior to his guilty plea. Petitioner explained that trial counsel never brought an interpreter to their visits. Petitioner claimed that he did not see the discovery materials until "much, much later after" trial counsel had received the materials even though he asked for the materials.

Petitioner recalled meeting with investigators prior to the entry of the guilty plea. The investigators spoke Spanish and "asked [him] questions about [his] history." Trial counsel "came back so [he] could sign" his plea paperwork, but Petitioner claimed that he did not have time to ask any questions. He was told there was "nothing else that could be done" except for pleading guilty. Petitioner felt "[m]ental pressure" from trial counsel to plead guilty so he told trial counsel about seven to ten days prior to trial that he did not want him as an attorney any longer.

Petitioner admitted that trial counsel explained to him that he was accepting a plea with a sentence of sixteen years. Petitioner also acknowledged that trial counsel told him he was facing a potential sentence of 60 years. Petitioner admitted that the trial court asked

trial counsel and an interpreter to take time to explain the plea to Petitioner during the plea hearing and that they complied. Petitioner admitted that the documents were read to him in Spanish.

Petitioner expressed his dissatisfaction with trial counsel's work on his case. On the day of the plea, Petitioner asked for a new lawyer "two times or more." Petitioner ultimately accepted the plea because the trial court told him he either had to accept the plea that day or "have another trial date with or without an attorney." According to Petitioner, if he "would have had an interpreter throughout the entire proceedings, it would have been something completely different."

Trial counsel explained that he was licensed to practice law in Tennessee in July of 1999. Trial counsel testified that he primarily practiced family law at the time of the post-conviction hearing. For the "first half" of his career, "it was primarily criminal law." At the time of Petitioner's guilty plea, he had "handled thousands" of criminal cases, including cases where the defendant was placed on the sex offender registry. Trial counsel had participated in about "12 jury trials."

Trial counsel began representing Petitioner in General Sessions Court prior to the preliminary hearing. He was originally retained but eventually Petitioner was declared indigent. Trial counsel explained that he filed a motion for and received discovery materials from the State. Trial counsel received the "last supplemental response to discovery about six weeks prior to trial."

Trial counsel "had no difficulty communicating with" Petitioner. According to trial counsel, Petitioner spoke "very good English." Trial counsel visited with Petitioner "quite a few times" prior to the plea at the jail and at court appearances. Trial counsel recalled that he gave Petitioner the discovery materials "[w]ithin a couple of days of receiving it," and trial counsel reviewed the materials with Petitioner several times.

Trial counsel did not see any merit in filing a motion to suppress Petitioner's statement because he "didn't admit to anything." According to trial counsel, Petitioner placed himself "in the room with the children at the time that this incident was alleged to have happened." Trial counsel also recalled that the videotaped interview of the victims was very compelling. In trial counsel's opinion, if the case went to trial their testimony would "carry the day for the State."

Trial counsel also recalled that he spoke with an expert about the DNA evidence. Trial counsel explained that there was some confusion around the DNA evidence because the report indicated the presence of a "Y-STR DNA." The presence of this particular DNA meant that the perpetrator was more than likely African-American. However, when trial

counsel spoke with the expert, trial counsel learned that one in 318 Hispanics actually had the Y-STR DNA. Trial counsel hoped that the State did not realize the DNA evidence could implicate Petitioner and attempted to negotiate with the State.

The State's initial offer was 30 years at 100%. Trial counsel continued to meet with Petitioner after the initial offer, taking the investigators with him at least once after the first offer. Trial counsel explained that the State asked what Petitioner was "willing to do," and trial counsel got Petitioner to "authorize [him] to offer the sixteen[-]year sentence that he actually ended up taking."

Trial counsel met with Petitioner about three times the week of the plea. When the State agreed to the terms of the plea, trial counsel took a copy of the paperwork to the jail for Petitioner to review. Trial counsel and the investigators visited Petitioner at the jail when he signed the paperwork.

Trial counsel explained that Petitioner was a "little rude and didn't like the offer." Petitioner consistently expressed that he wanted to "go back to Mexico." Trial counsel "made sure [Petitioner] understood that if we didn't reach an agreement, if we went to trial, . . . I thought it was likely he would be convicted." Trial counsel also told Petitioner that "the minimums were substantially more than sixteen years." Trial counsel denied forcing Petitioner to "do anything."

Assistant trial counsel testified that she worked with trial counsel. At the time of the post-conviction hearing, they were "law partners." She only spoke English with Petitioner and "was present for some of the meetings with the private investigators where some Spanish was spoken." She described the English conversations she participated in with Petitioner as "very intelligent, [and] articulate." She testified consistently with trial counsel's testimony, confirming that Petitioner was not happy with going to trial or with the guilty plea offer. According to assistant trial counsel, Petitioner was interested in "going back to Mexico." Assistant trial counsel testified that trial counsel did not pressure Petitioner to plead guilty.

Detective Sergio Garcia testified that he was a detective with the Special Victims Unit of the Franklin Police Department. He was the lead detective in Petitioner's case. Detective Garcia was a native Spanish-speaker and conducted an interview with Petitioner entirely in Spanish. During the interview, Petitioner admitted that he was in bed with the victims playing a game about mermaids. According to Detective Garcia, Petitioner's admission placed him in the room with the victims when the abuse was supposed to have occurred.

- 4 -

Detective Garcia also testified that Defendant exhibited some grooming behavior. For example, Petitioner purchased gifts for the victims prior to the alleged abuse. As part of the investigation, DNA testing was performed on the underwear of one of the victims. There was DNA in the underwear, and Defendant could not be excluded from the results. The presence of DNA corroborated the statements of the victims.

In a well-fashioned and thorough written order, the post-conviction court denied relief on November 8, 2019. Petitioner filed a notice of appeal on December 13, 2019.[1]

*Analysis*

On appeal, Petitioner argues that the post-conviction court improperly denied relief. Specifically, Petitioner argues that the trial court erred by applying pressure to Petitioner to plead guilty by ordering "him to be his own interpreter," thus his guilty pleas were unknowingly and involuntarily entered.[2] The State contends that the post-conviction court properly determined that Petitioner entered the guilty pleas knowingly, intelligently, and voluntarily.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's

---

[1] Petitioner's notice of appeal is untimely. *See* Tenn. R. App. P. 4. The State urges this Court to dismiss the appeal. However, the notice of appeal is not jurisdictional. We waive the timely filing of the notice of appeal despite Petitioner's failure to explain the reason for the late filing of the notice of appeal.

[2] Any issues raised in the petition for post-conviction relief that were not raised by Petitioner on appeal are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

- 5 -

conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Knowing and Voluntary Guilty Plea*

A guilty plea "must be entered knowingly, voluntarily, and intelligently." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977). Relevant factors are whether the petitioner was represented by competent counsel, the opportunity to confer with counsel about the options available to him, the extent of advice from counsel concerning the charges against him and the penalty imposed, and the reasons the petitioner pled guilty. *Blankenship v. State*, 858 S.W.2d 897, 904-905 (Tenn. 1993).

Petitioner avers that the trial court and trial counsel pressured him into pleading guilty. However, the record clearly shows that Petitioner received information about his guilty plea in both English and Spanish and was given the option to proceed to trial by the trial court at the guilty plea acceptance hearing. The trial court spent time at the beginning of the plea hearing to explain the options to Petitioner, including going forward with the plea or proceeding to trial. The trial court questioned Petitioner at length about whether he understood the ramifications of his plea. The trial court even took a recess so that Petitioner could "convene" with trial counsel and an interpreter prior to the entry of the plea. When Petitioner complained that he did not have enough time to confer with counsel prior to the entry of the plea and wanted "more time" the trial court again offered Petitioner a chance to meet with trial counsel and an interpreter. The trial court gave Petitioner three options, "additional time to confer with [trial counsel], using the services of [the interpreter], and go[ing] forward with the settlement that's reflected by the papers here on the bench, or whether you want to go to trial on Monday." The trial court told Petitioner the court was "in no way interested in [Petitioner] entering into a plea or an agreement to resolve this case unless [Petitioner] believe[d] it to be in [his] own best interests." The trial court told Petitioner if he "wanted to go forward with the trial Monday, we are prepared to do that, and [there was] absolutely no hesitation in affording [Petitioner] the opportunity to have [his] case tried to a jury." The trial court granted another recess for Petitioner to confer with counsel. When they returned to the courtroom, the trial court asked Petitioner what he wanted to do with the case. In response, Petitioner indicated several times that he wanted to go forward with the settlement and "take the deal." When asked by the trial court if his plea was "voluntary and not the result of any kind of force, threat, or promise," Petitioner responded, "[W]ell yes, of course." Petitioner pled guilty and signed the plea petition which also stated that Petitioner's actions were voluntary.

The post-conviction court determined that Petitioner did not prove his allegations by clear and convincing evidence. The post-conviction court determined that Petitioner entered his pleas knowingly, intelligently, and voluntarily, specifically determining that Petitioner was "not credible." The claim that he was "pressured" into taking the plea did not amount to an involuntary plea. The post-conviction court noted that the decision to plead guilty was Petitioner's "own" choice, accrediting the testimony of both trial counsel and assistant trial counsel.

With respect to Petitioner's argument that the trial court improperly engaged in plea negotiations by telling him he could either take the plea or go to trial, the post-conviction court determined that the trial court told Petitioner multiple times that he had a choice about pleading guilty or going to trial and that there was "abundant" evidence that Petitioner entered the plea "of his own volition."

The evidence does not preponderate against the judgement of the post-conviction court. Petitioner has wholly failed to provide clear and convincing evidence that his plea was the result of some type of unknowing and involuntary process. The record supports the deportment of the trial court was most indulgent of the Petitioner and in no way "overly involved" itself in the plea. Therefore, Petitioner is not entitled to relief.

*Ineffective Assistance of Counsel*

As part of his argument about the nature of the plea, Petitioner complains trial counsel's representation amounted to ineffective assistance of counsel. Specifically, he argues that the post-conviction court erred when it failed to determine that trial counsel pressured him to plead guilty. We disagree.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the

components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Specifically, with regard to ineffective assistance of counsel, the post-conviction court determined that Petitioner was informed about the mandatory minimum penalty of his charges and the range of punishment that accompanied the charges. The post-conviction court also determined that trial counsel informed Petitioner about the possibility of consecutive sentences and reviewed the plea documents with Petitioner in English and Spanish to ensure Petitioner understood them prior to the entry of the pleas. Petitioner failed to carry his burden to establish ineffective assistance of counsel.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE